PUEBLO DE PUERTO RICO, apelado, *v.* HÉCTOR L. PELLOT PÉREZ, acusado y apelante.

*Número:* CR-84-20      *Resuelto:* 30 de junio de 1988

---

792

*Andrés H. Soto Morales, Felipe Cirino Colón* y *Enrique Rivera Mendoza*, de la *Sociedad para Asistencia Legal*, abogados del apelante; *Américo Serra, Procurador General Interino*, y *Justo Gorbea Varona, Procurador General Auxiliar*, abogados de El Pueblo.

EL JUEZ PRESIDENTE SEÑOR PONS NÚÑEZ emitió la opinión del Tribunal.

El apelante fue hallado culpable de escalamiento agravado, conjuntamente con Ismael Rosa Aldarondo, en un mismo juicio visto ante tribunal de derecho. Aun cuando Rosa Aldarondo también apeló su convicción, y a petición del Procurador General ambos recursos fueron consolidados, el deceso subsiguiente de Rosa Aldarondo provocó el archivo de su recurso.

I

El 5 de abril de 1983, el Sr. Ramón Avilés Martínez dejó guardada una mercancía en un almacén que tenía alquilado en el Barrio Aceitunas de Moca. Al día siguiente volvió al almacén y encontró la puerta y el candado rotos. La mercancía que había dejado allí ya no estaba. Entre las cosas que desaparecieron, había un sofá forrado con papel de estraza.

En horas de la noche de 5 de abril de 1983, la testigo de El Pueblo, Haydée Lorenzo, pudo observar a través de la ventana de su cuarto a un hombre alto y trigueño, quien se le pareció al coacusado Héctor L. Pellot Pérez, que introducía en el negocio del coacusado Ismael Rosa Aldarondo lo que le

pareció ser un sofá cubierto de papel de estraza. Vio, además, a otras dos (2) personas dentro del establecimiento. Reconoció a una de ellas, Virgilio Torres Arce, pues lo había visto anteriormente en el negocio.

Torres Arce fue llevado a Fiscalía donde prestó declaración jurada, luego de hacerle las advertencias legales. En presencia de varios testigos, éste declaró e incriminó a Pellot Pérez y a Rosa Aldarondo. Posteriormente, se le concedió inmunidad a Torres Arce por ser la persona con mayor conocimiento de los hechos. Éste compareció a la vista preliminar en la cual, antes de prestar testimonio, leyó la declaración jurada que había prestado anteriormente sin hacer ningún comentario. El juez que presidió la vista preliminar determinó causa probable por el delito de escalamiento agravado contra Rosa Aldarondo y Pellot Pérez.

Durante el juicio, el tribunal ordenó un receso por no estar disponible el testigo de cargo Torres Arce. Señaló la continuación del proceso para dos (2) semanas más tarde y ordenó a los alguaciles que hicieran las gestiones necesarias para el arresto de este testigo. Por no haber sido posible encontrar a dicho testigo, cuando continuó el caso el Ministerio Público ofreció en evidencia la declaración del testigo no disponible por voz del Fiscal que había presidido la vista preliminar, Juan Plúguez. El juez de instancia admitió esta declaración a tenor con la Regla 64(A)(5) y (B)(1) de Evidencia, 32 L.P.R.A. Ap. IV. El testimonio así ofrecido fue que Torres Arce había declarado en la vista preliminar y que para la fecha de los hechos, el 5 de abril de 1983, se encontraba trabajando en el negocio del coacusado Rosa Aldarondo en Moca. A eso de las 10:30 P.M. vio al coacusado Pellot Pérez, conocido como el "Hindú", y al coacusado Rosa Aldarondo que introducían en el negocio unos muebles cubiertos de papel de estraza. Virgilio Torres Arce se puso muy nervioso. Para calmarlo, el "Hindú" le ofreció un trago de ron. Le dijo, además, que eso era "material caliente" que habían hurtado

en un almacén cercano y que el dueño era el papá del "gordo Avilés". El señor Rosa Aldarondo mandó a callar al "Hindú".

El tribunal encontró culpables a ambos acusados por el delito de escalamiento agravado y los sentenció a nueve (9) años de presidio. Los apelantes presentaron oportunamente sendos escritos de apelación, en los cuales alegan la comisión de cinco (5) errores por el honorable tribunal sentenciador.

Después de archivado —como hemos ya señalado— el recurso presentado por Rosa Aldarondo, procedemos a considerar los errores apuntados por el apelante Pellot Pérez. Nos referiremos a la prueba que tuvo ante sí el honorable juez de instancia en cuanto esto sea necesario para discutir los errores señalados.

## II

Como primer señalamiento, alega el apelante que erró el tribunal de instancia al admitir en evidencia el testimonio que Torres Arce había dado en la vista preliminar, por ser prueba de referencia y no darse las circunstancias requeridas por la Regla 64 de Evidencia, 32 L.P.R.A. Ap. IV, para que fuese admisible por no estar disponible dicho testigo. Alega que no se demostró que el Fiscal hubiese desplegado las diligencias necesarias para conseguir su comparecencia. Como segundo error, alega que erró el tribunal al admitir la declaración de varios testigos no incluidos al dorso de la acusación con el fin de tratar de establecer la no disponibilidad del testigo ausente. Por estar relacionados, discutiremos los primeros dos (2) errores conjuntamente.

Según surge de las minutas del tribunal de instancia, el testigo Torres Arce había sido debidamente citado para el día del juicio, el 8 de noviembre de 1983. Por no comparecer y ser éste testigo principal de cargo, se pospuso la vista a petición del Fiscal para el 16 de noviembre de 1983. Luego de iniciado el juicio, el Fiscal comenzó a sentar las bases para ofrecer la declaración anterior del testigo no disponible. A

esos fines, testificaron el agente Marcelino Crespo, quien aparecía en la acusación como testigo de El Pueblo, y el padre del testigo ausente, quien no aparecía en la acusación como testigo de El Pueblo, pero sólo testificó para establecer que no conocía el paradero de su hijo. El Fiscal anunció que ofrecería el testimonio del testigo ausente por voz del Fiscal Juan Plúguez, quien había sido el Fiscal en la vista preliminar. El tribunal recesó el caso por estipulación de las partes, ordenó a los alguaciles que hicieran gestiones encaminadas al arresto del testigo ausente y citó al Fiscal Plúguez para la continuación del caso el 1ro de diciembre de 1983. Es en esta última vista que el Fiscal sentó a declarar a dos (2) testigos no anunciados: al alguacil de sala Armando Corchado y al policía Juan Arce. Éstos declararon sobre las innumerables gestiones que realizaron para localizar al testigo ausente. El Fiscal, entonces, procedió a llamar como testigo al Fiscal Plúguez para que declarara lo que dijo el testigo ausente en la vista preliminar.

La Regla 64(A)(5) de Evidencia, *supra*, requiere del proponente de la declaración del testigo no disponible que demuestre haber desplegado diligencia para conseguir su comparecencia mediante citación del tribunal. Aquí el testigo ausente fue debidamente citado por el tribunal para el día del juicio y, al no comparecer, el juez ordenó su arresto por desacato en dos (2) ocasiones. El Fiscal también presentó prueba sobre las gestiones infructuosas realizadas por el alguacil del tribunal y la Policía para localizar al testigo. Quedó demostrado que la comparecencia del testigo no se pudo lograr por medio de citación del tribunal u otros medios razonables, y que El Pueblo realizó un esfuerzo de buena fe para lograr su comparecencia. Regla 64(A)(5) de Evidencia, *supra*. Véase M.H. Graham, *Handbook of Federal Evidence*, 2da ed., Minnesota, Ed. West Pub. Co., 1986, Sec. 804.0, págs. 928–931.

■ La presentación por parte del Fiscal de testigos no incluidos al dorso de la acusación fue necesaria para cumplir con el requisito de la Regla 64(A)(5) de Evidencia, *supra*, de probar que se desplegó diligencia para conseguir la comparecencia del testigo ausente y poder pasar prueba sobre el testimonio del testigo no disponible, según lo permite la Regla 64(B)(1) de Evidencia, *supra*. No era posible para el Fiscal incluirlos en la acusación, porque éste no tenía conocimiento de que el testigo no comparecería al juicio. La defensa obtuvo conocimiento de la ausencia del testigo de cargo el 8 de noviembre de 1983. El 17 de noviembre el Fiscal informó que se proponía presentar la declaración del testigo ausente. El apelante fue informado de la intención del Ministerio Público de presentar en evidencia la declaración del testigo ausente mediante el testimonio del Fiscal Plúguez, con tiempo suficiente para preparar una defensa adecuada. *Hoyos Gómez v. Tribunal Superior*, 90 D.P.R. 201, 203 (1964).

El apelante también objeta la admisibilidad de la declaración del testigo Torres Arce al cuestionar la confiabilidad del recuerdo del Fiscal Plúguez. Añade que el Fiscal se refrescó la memoria antes de declarar en el juicio al leer la declaración jurada que había prestado el testigo ausente, la cual no fue admitida ni era admisible en evidencia.

■ Uno de los medios aceptados para presentar en el juicio el testimonio anterior vertido en la vista preliminar por el testigo no disponible es el de reproducción oral. "[L]a declaración de un testigo presente que lo escuchó, es suficiente si de modo substancial reproduce los hechos esenciales en la declaración del testigo ausente del juicio." *Pueblo v. Ríos Nogueras*, 111 D.P.R. 647, 654 (1981).

El Fiscal Juan J. Plúguez no sólo estuvo presente, sino que participó activamente en el desarrollo de la declaración del testigo ausente por haber sido él quien presentó e inte-

rrogó a ese testigo en la vista preliminar. Antes de declarar en el juicio, el Fiscal se refrescó la memoria al utilizar la declaración jurada que el testigo ausente había prestado anteriormente. Surge de los hechos que el testigo Torres Arce, antes de declarar en la vista preliminar, leyó la declaración jurada que había prestado anteriormente y no hizo ningún comentario desaprobándola. Además, la defensa tuvo la oportunidad de impugnar la declaración de Torres Arce en la vista preliminar con la declaración jurada. Regla 44(B)(5) de Evidencia, 32 L.P.R.A. Ap. IV.

▆ La Regla 49 de Evidencia, 32 L.P.R.A. Ap. IV, permite que un testigo utilice un escrito para refrescar su memoria con respecto a cualquier asunto objeto de su testimonio. No es necesario que el escrito en sí sea admisible en evidencia, pues lo único que importa es que el escrito reviva la memoria del testigo para que éste pueda declarar según su propio recuerdo. Graham, *op. cit.*, Sec. 612.2, págs. 556–559.(1)

La defensa tuvo a su disposición la declaración jurada y la oportunidad de contrainterrogar al Fiscal Plúguez para impugnar su credibilidad.

▆ La defensa así lo hizo y contrainterrogó al Fiscal Plúguez, confrontándolo con la declaración jurada del testigo

---

(1) Debemos aclarar que bajo la Regla 49 de Evidencia, 32 L.P.R.A. Ap. IV ("escritos para refrescar memoria"), el testigo puede utilizar cualquier medio para lograr este propósito. No es el caso de la Regla 65(E) de Evidencia, 32 L.P.R.A. Ap. IV ("escrito de pasada memoria"). El alcance de la Sec. 771 del Código de Evidencia de California, antecedente directo de nuestra Regla 49, *supra*, también ha sido interpretado flexiblemente. "It should be noted that there is no restriction in the Evidence Code on the means that may be used to refresh recollection. Thus, the limitations on the types of writings that may be used as recorded memory under Section 1237 [correspondiente a la Regla 65(E) nuestra, *supra*, 'escrito de pasada memoria'] do not limit the types of writings that may be used to refresh recollection under Section 771." West's Ann. Evid. Code Sec. 771, págs. 149–150 (1966).

no disponible Torres Arce. El Fiscal Plúguez en todo momento reafirmó su declaración sobre el testimonio prestado en la vista preliminar por el testigo ausente y *expresó que éste había sido contrainterrogado extensamente* por los abogados de la defensa, y *siempre se mantuvo en lo que había dicho en el directo*. La defensa pudo también impugnar la credibilidad del declarante no disponible en el juicio, según lo permite la Regla 67 de Evidencia, 32 L.P.R.A. Ap. IV.

■ Recordemos que la Regla 64 de Evidencia, *supra*, "responde al propósito general de propiciar el acceso de la verdad a las salas de justicia, quitando obstáculos procesales que en ocasiones crecen como barreras de inmunidad y derrotan el juicio justo". *Pueblo v. Ríos Nogueras*, supra, pág. 652.

Aunque en este caso el Fiscal Plúguez no pudo recordar algunos hechos y circunstancias relacionadas con la declaración anterior, éste sí declaró sobre la esencia de la misma.

■ El tribunal no debe excluir mecánicamente un testimonio cuando la memoria del declarante es débil en cuanto a hechos incidentales e insignificantes. 2 *Underhill's Criminal Evidence* Sec. 426, pág. 1089 (1956). "Cuando el método usado por razón de necesidad para introducir en el juicio el testimonio anterior vertido en la vista preliminar es el de reproducción oral, la declaración de un testigo presente que lo escuchó, es suficiente si de *modo substancial* reproduce los *hechos esenciales* en la declaración del testigo ausente del juicio." (Énfasis suplido.) *Pueblo v. Ríos Nogueras*, supra, pág. 654. Los primeros dos (2) errores señalados no fueron cometidos.

### III

Como tercer error, alega el apelante que el tribunal incidió al admitir en evidencia el testimonio del policía Juan

Arce, quien no fue anunciado previamente como testigo de cargo. Alega que, bajo la excusa de pasar prueba de la no disponibilidad del testigo, Torres Arce utilizó al policía Arce para introducir en evidencia una confesión del coacusado Pellot Pérez, la cual era inadmisible en evidencia por haber sido obtenida mediante un interrogatorio bajo custodia sin habérsele dado las advertencias legales y en violación a su derecho de tener a su abogado presente durante el interrogatorio.

El policía Juan Arce fue llamado a declarar a los únicos efectos de demostrar la no disponibilidad del testigo Torres Arce. Éste declaró que había intervenido con el coacusado Pellot Pérez con relación a otro caso de escalamiento y que éste le manifestó que tenía otros casos en su contra. Declaró que le advirtió que podía estar asistido de abogado y que no estaba presionado en ningún momento. El imputado insistió en que quería hablar con el Fiscal, a lo que el policía accedió. El policía Arce testificó que estuvo presente cuando el apelante Pellot Pérez declaró al Fiscal "que él, en unión a dos personas más, había participado en un escalamiento y que él no había recibido nada a cambio". E.N.P., pág. 7. Declaró que Pellot Pérez dijo que el coacusado Rosa Aldarondo le había manifestado que el testigo Torres Arce "estaba en ácido" (íd.) y que no iba a aparecer nunca. En el contrainterrogatorio el policía Arce declaró que el Fiscal había hecho "las advertencias de ley" (íd., pág. 9) al apelante y le recordó sobre el caso que se estaba ventilando en su contra, y que fue Pellot Pérez quien insistió en hablar.

En estas circunstancias, resolvemos que el tribunal de instancia erró al admitir lo declarado por el policía Arce en cuanto a las supuestas admisiones del coacusado Pellot Pérez.

■ La advertencia que hizo el policía no cumple con los requisitos que se han establecido como salvaguardas de derechos constitucionales, los cuales requieren que a una per-

sona bajo custodia se le advierta inmediatamente que tiene derecho a permanecer en silencio y a no incriminarse, y que tiene derecho a contratar abogado o que se le asigne uno antes de que se le someta a interrogatorio. *Doyle v. Ohio*, 426 U.S. 610 (1976); *Miranda v. Arizona*, 384 U.S. 436, 479 (1966); *Pueblo v. Guadalupe Rosa*, 94 D.P.R. 190 (1967); *Rivera Escuté v. Jefe Penitenciaría*, 92 D.P.R. 765 (1965). Además, no surge de la declaración del policía ni de la prueba presentada por el Ministerio Público cuáles fueron las advertencias que se le hicieron en Fiscalía al apelante Pellot Pérez antes de que prestara su declaración. Correspondía a El Pueblo el peso de la prueba de demostrar que se hicieron las advertencias legales y que el acusado renunció a sus derechos de forma voluntaria mediante un abandono intencional e inteligente. *Edwards v. Arizona*, 451 U.S. 477, 482 (1981); *Tague v. Louisiana*, 444 U.S. 469, 470–471 (1980). El Ministerio. Público no descargó esa responsabilidad adecuadamente. Las admisiones hechas por el apelante Pellot Pérez ante el Fiscal eran inadmisibles en evidencia.

■ Resta por considerar si la introducción en evidencia de las admisiones del apelante Pellot Pérez constituyó error perjudicial que amerite la revocación de la sentencia.

■ Es doctrina establecida que los errores cometidos por los tribunales de instancia no acarrean revocación automática. La Regla 4 de Evidencia, 32 L.P.R.A. Ap. IV, dispone:

> No se dejará sin efecto una determinación de admisión de evidencia ni se revocará sentencia o decisión alguna por motivo de admisión errónea de evidencia a menos que:
> (1) La evidencia fue erróneamente admitida a pesar de la oportuna y correcta objeción de la parte perjudicada por la admisión, y
> (2) el tribunal que considera el efecto de la admisión errónea entiende que ésta fue factor decisivo o sustancial en la sentencia o decisión cuya revocación se solicita.

Esta disposición es conocida como la "doctrina del error perjudicial". "Esto quiere decir que si *probablemente* el resultado hubiera sido distinto de no haberse emitido o excluido la evidencia, y habiendo mediado oportuna y correcta objeción, el tribunal apelativo probablemente revoque." (Énfasis en el original.) E.L. Chiesa, *Práctica Procesal Puertorriqueña, Evidencia*, San Juan, Pubs. J.T.S., 1983, Vol. I, Cap. 1, pág. 8.

En cuanto a errores que afecten derechos constitucionales de la parte afectada, la tónica de la doctrina aún es la misma. Esto es, no todo error que afecte derechos constitucionales acarrea revocación. En *Chapman v. California*, 386 U.S. 18 (1967), se dijo que la obligación de demostrar que el error cometido no contribuyó al veredicto obtenido recae sobre la parte que se benefició del mismo. "Certainly error, constitutional error, in illegally admitting highly prejudicial evidence or comments, casts on someone other than the person prejudiced by it a burden to show that it was harmless." *Chapman v. California*, supra, pág. 24. Asimismo, se resolvió que para que un error que lesione derechos constitucionales sea declarado no perjudicial (*harmless*) el tribunal debe estar convencido más allá de duda razonable ("the court must be able to declare a belief that it was harmless beyond a reasonable doubt"). Íd.

En esta jurisdicción ya habíamos hecho referencia a este aspecto del caso *Chapman v. California*, supra, en *Pueblo v. Ríos Álvarez*, 112 D.P.R. 92, 122 (1982), pero no resolvimos específicamente sobre cuál parte recae la responsabilidad de demostrar más allá de toda duda razonable que el error en la admisión no fue perjudicial. En esta ocasión resolvemos que en casos de admisiones erróneas que puedan conllevar menoscabo de derechos constitucionalmente protegidos, como lo es el de autoincriminación, el peso de probar

que la evidencia erróneamente admitida no fue perjudicial recae sobre la parte que se benefició del error cometido.

En el caso ante nuestra consideración: (1) la llamada "confesión incriminatoria" la constituyen expresiones del apelante Pellot Pérez ante el Fiscal y el policía Arce, de las cuales no se puede determinar si se refería a los hechos por los cuales fue detenido en ese momento o a los hechos del caso de autos por los cuales se le estaba procesando; (2) las expresiones aludidas fueron parte del testimonio del policía Arce, el cual fue ofrecido únicamente a los efectos de demostrar la no disponibilidad del testigo Virgilio Torres;(2) (3) no se trata de un caso ventilado ante Jurado, sino de uno celebrado ante tribunal de derecho y, por lo tanto, el apelante fue juzgado por un juez adiestrado para descartar toda aquella evidencia que se pueda filtrar con aquella ofrecida y admitida correctamente con un propósito legítimo; (4) el Ministerio Público presentó prueba independiente contundente sobre la culpabilidad del apelante. La testigo de cargo, Haydée Lorenzo, declaró que la misma noche de los hechos delictivos vio a tres (3) personas que introducían mercancía en el almacén del apelante Rosa Aldarondo. Identificó a Torres Arce. Éste declaró que esa misma noche, cuando se encontraba en los alrededores del almacén de Rosa Aldarondo, vio a éste y al apelante Pellot Pérez que descargaban mercancía. El apelante Pellot Pérez comentó que se trataba de mercancía hurtada de un almacén cercano perteneciente al padre del "gordo Avilés".(3) Una vez Pellot Pérez dijo esto, Rosa Aldarondo le ordenó que se callara.

A la luz de todas estas circunstancias, resolvemos que el Ministerio Público descargó adecuadamente su obligación y

---

(2) Las expresiones supuestamente incriminatorias fueron las siguientes: "que él, en unión a dos personas más, había participado en un escalamiento y que él no había recibido nada a cambio." E.N.P., pág. 7.

(3) Precisamente, el Sr. Ramón Avilés Martínez poseía el almacén cercano de donde se hurtó la mercancía.

demostró más allá de toda duda razonable que la admisión de las declaraciones de Pellot Pérez ante el Fiscal constituyó un error no perjudicial. *Chapman v. California*, supra.

### IV

Como cuarto y quinto error, alega el promovente en su escrito de apelación que erró el juez de instancia al declarar sin lugar su moción de absolución perentoria y que no se probó la culpabilidad del acusado más allá de toda duda razonable. No le asiste la razón. La prueba presentada por el Ministerio Público y creída por el juzgador de hechos configura el delito imputado. Veamos.

La declaración prestada por Virgilio Torres en la vista preliminar, admitida en el juicio como excepción a la regla sobre prueba de referencia, constituye prueba más que suficiente de que el acusado participó en la apropiación ilegal de mercancía que se llevó a cabo en el almacén del querellante Avilés la noche de 5 de abril de 1983. Además, esa declaración fue corroborada por el testimonio prestado por la testigo Haydée Lorenzo, quien declaró que esa misma noche, alrededor de las 10:30 P.M., observó a través de su ventana a una persona que introducía en el negocio de Rosa Aldarondo lo que le pareció ser un sofá de papel de estraza e identificó allí a Torres Arce. Ella estuvo presente en Fiscalía cuando Torres Arce prestó declaración jurada en la que incriminaba al apelante. El querellante Avilés declaró que el 5 de abril de 1983 había dejado guardado en su almacén unos muebles, entre los cuales se encontraba un sofá forrado de papel de estraza. Cuando volvió al día siguiente, no estaba allí la mercancía y se había forzado el candado y la puerta del almacén. El testigo de la defensa Germán Alers declaró que la noche de 5 de abril el apelante y el testigo Torres Arce estaban en el negocio de Rosa Aldarondo, como a eso de las 10:00 P.M., poco antes de la comisión del delito.

■ Los elementos constitutivos del delito de escalamiento agravado "pueden ser demostrados mediante evidencia circunstancial", es decir, por inferencias razonables que surgen del conjunto de los hechos y circunstancias probadas. *Pueblo v. Soriano Rodríguez*, 92 D.P.R. 46, 48 (1965); *Pueblo v. Torres*, 81 D.P.R. 678, 681 (1960).

■ De la relación anterior de la prueba presentada y creída por el juez de instancia quedan probados los elementos del delito de escalamiento agravado más allá de duda razonable. Quedó probada la penetración del acusado en el almacén del señor Avilés con el propósito de cometer el delito de apropiación ilegal, el cual cometió, y esto ocurrió de noche y utilizando fuerza para la penetración. Arts. 170 y 171 del Código Penal, 33 L.P.R.A. secs. 4276 y 4277.

■ Corresponde al Jurado o, en su' defecto, al juez de instancia dirimir los conflictos de prueba. Son éstos quienes normalmente están en mejores condiciones de aquilatar la prueba, pues gozan de la oportunidad de ver y escuchar directamente a los testigos. En ausencia de error. manifiesto, prejuicio, parcialidad o pasión, no existe fundamento en derecho para intervenir con las determinaciones de hecho que haga el tribunal de instancia. *Pueblo v. De Jesús Rivera*, 113 D.P.R. 817, 826 (1983); *Pueblo v. Pagán Díaz*, 111 D.P.R. 608, 621 (1981); *Pueblo v. Cruz Negrón*, 104 D.P.R. 881, 882 (1976). Los errores cuarto y quinto no se cometieron.

Por los fundamentos anteriores, *se confirmarán las sentencias apeladas.*

El Juez Asociado Señor Rebollo López concurre con el resultado sin opinión escrita.